IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUSSEX COUNTY PLANNING & ZONING COMMISSION, | § § § | No. 440, 2025 |
| Defendant Below, Appellant, | § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | C.A. No. S24A-09-001 |
| SMOKEY HOLLOW, LLC, | § § | |
| Plaintiff Below, Appellee. | § § § | |

Submitted: May 20, 2026
Decided: August 6, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **LEGROW**, Justices.

Upon appeal from the Superior Court. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.

David N. Rutt, Esquire, MOORE & RUTT, P.A., Georgetown, Delaware, *for Defendant Below, Appellant Sussex County Planning & Zoning Commission.*

Richard A. Forsten, Esquire, (*argued*), Jennifer M. Becnel-Guzzo, Esquire, and Mackenzie M. Sindelar, Esquire, SAUL EWING LLP, Wilmington, Delaware, *for Plaintiff Below, Appellee Smokey Hollow LLC.*

**SEITZ**, Chief Justice:

The Sussex County Planning & Zoning Commission approved Smokey Hollow, LLC's application to build an 82-lot residential subdivision. The approval came with strings attached – 19 conditions. Smokey Hollow agreed to all but two conditions – eliminating one lot and requiring a 25-foot fixed buffer from non-tidal wetlands. The Commission refused to reconsider the two conditions.

Smokey Hollow sought certiorari review by the Superior Court. The court struck the two conditions as unreasonable. On appeal, the Commission argues that the court erred by applying a faulty reasonableness analysis. After careful review, we reverse and remand the lot elimination condition but affirm the Superior Court on the buffer condition.

I.

A.

Under the Delaware Constitution:

> The General Assembly may enact laws under which municipalities and the County of Sussex and the County of Kent and the County of New Castle may adopt zoning ordinances, laws, or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use, as well as the use to be made of land in such districts for other than agricultural purposes; and the exercise of such authority shall be deemed to be within the police power of this State.[1]

---

[1] Del. Const. art. II, § 25.

In Sussex County's case, the General Assembly delegated authority to Sussex County Council to regulate land use and development.[2] The General Assembly also established the County Planning and Zoning Commission of Sussex County ("Commission").[3] It created the Commission to address land use development in a way that promotes "the health, safety, prosperity and general welfare," "secur[es] coordinated plans for land use, transportation, public facilities and utilities and public works expenditures," and "prevent[s] the unnecessary duplication of facilities or utilities."[4] The Commission advises County Council on zoning changes and conditional use requests, but approves or denies subdivision applications.[5]

The Sussex County Zoning Code ("Zoning Code") provides that all unincorporated Sussex County land and certain incorporated municipalities without zoning provisions are part of zoning districts defined by Sussex County's Zoning Map.[6] If a developer plans a project on a parcel and the proposed development cannot be undertaken as of right – meaning it is not permitted under the existing

---

[2] 9 *Del. C.* § 6902.

[3] *Id.* § 6802.

[4] *Id.*

[5] Sussex Cnty. C. §§ 115-173, 115-216, 99-6, 99-9.

[6] *Id.* §§ 115-2, 115-5, 115-7.

3

zoning classification – the landowner must apply to rezone the property.[7]  If the parcel's current zoning allows the proposed development but the property must be subdivided, the property owner follows the Sussex County subdivision approval process.[8]

Stated generally, under the Sussex County major subdivision approval process, after the developer completes the State of Delaware Planning Office for Preliminary Land Use Service ("PLUS") review process,  the developer meets with the Sussex County Planning and Zoning Office ("Zoning Office") to review the proposed project and submits a preliminary plan.[9]  If the subdivision has 50 or more dwelling units and is in a Coastal Area, the developer must also provide an environmental assessment.[10]  After Zoning Office review, the Commission holds a public hearing on the preliminary plan.[11]  The Commission must "either tentatively

---

[7] *See id*. Ch. 115.

[8] *See id*. Ch. 99.  A major subdivision is any subdivision of six or more lots.  *Id.* § 99-5.  A minor subdivision is "[a]ny subdivision creating five or fewer lots and not adversely affecting the development of the remainder of the parcel or adjoining property and not in conflict with any provisions or portion of the County Comprehensive Plan, Official Map, Zoning Ordinance, or this chapter."  *Id.*

[9] *See* 29 *Del. C.* Ch. 92; Sussex Cnty. C. §§ 99-7, 99-8.

[10] Sussex Cnty. C. § 115-194.3.

[11] *Id.* § 99-9.  Recently enacted Senate Bill 23 allows some code-compliant or "by-right" residential subdivisions to bypass public hearings.  S.B. 23, 153d Gen. Assem. § 9209(b)(4) (2026).

approve or disapprove or conditionally approve the plat subject to specific changes or modifications."[12]

If the applicant disagrees with the Commission's decision, it may appeal to County Council within 30 days after the Commission's official action.[13] The applicant can also "request in writing that the Commission reconsider a condition imposed by the Commission but there shall be no appeal from the decision of the Commission on such request."[14]

## B.

Smokey Hollow owns a 66-acre parcel in unincorporated Sussex County where it wanted to build an 82-lot residential subdivision. The property is zoned GR, or General Residential, meaning that the developer can build a residential subdivision as of right and did not need to rezone the property. It is also located in a Coastal Area. As explained above, because Smokey Hollow sought to subdivide the parcel into over 50 lots, the Zoning Code required major subdivision approval from the Commission.

Smokey Hollow completed PLUS review, conferred with the Zoning Office on technical requirements, filed a subdivision application with the Office, and

---

[12] Sussex Cnty. C. § 99-9(A).

[13] *Id.* § 99-39(A).

[14] *Id.* § 99-39(H).

submitted a preliminary plan. At the public hearing, homeowners in the contiguous Fox Haven residential subdivision raised a number of concerns, including that lot 64 posed flooding and runoff risks to their neighborhood.[15] They also spoke about how the proposed development could displace wildlife, destroy trees, increase summer traffic, encroach on private property, and change the area's natural character.[16]

The Commission unanimously approved the preliminary plan subject to 19 conditions.[17] Smokey Hollow accepted all but two – Condition A, which eliminated lot 64, and Condition O, which required a 25-foot fixed (as opposed to an average) minimum buffer from non-tidal wetlands.[18] Regarding Condition A, the Commission explained that lot 64 was an isolated lot, access was dependent on crossing wetlands, and the lot and surrounding area were subject to frequent flooding.[19] The Commission did not explain why it imposed Condition O. It stated that "there shall be a buffer that is at least 25 feet wide from all non-tidal wetlands."[20]

---

[15] *See* App. to Appellant's Opening Br. at A117-18 [hereinafter A__].

[16] *Id.*

[17] A137-40.

[18] A131-35. Smokey Hollow claims that imposing the 25-foot *fixed* buffer from non-tidal wetlands results in the loss of 8 lots (10% of the project). But maintaining the *average* 30-foot buffer would not eliminate any additional lots. *See* App. to Appellee's Answering Br. at B063-68 [hereinafter B__]; *see also* Answering Br. at 10 n.19.

[19] A123.

[20] A127.

Smokey Hollow asked the Commission to reconsider the two conditions.[21] It argued that the Commission could not eliminate a lot that complied with the subdivision regulations.[22] It also pointed out that a newly adopted ordinance exempted pending applications from the buffer requirement.[23] As a compromise, Smokey Hollow proposed several ways to address the Commission's concerns.[24]

The Commission stuck by its determination that lot 64 encroached on wetlands and that developing it could increase flooding in the area.[25] As it stated during the public hearing addressing the request to amend the conditions, lot 64 "was surrounded by the wetlands;" subject to flooding; and a lot owner would have to "cross[] the wetlands to get to the lot."[26] It also held firm on the fixed buffer requirement. The Commission explained that it imposed "these conditions based on public testimony and site conditions" and that it "didn't just take that lot away from [Smokey Hollow]" but required the conditions "to uphold the code."[27]

---

[21] B063-68.

[22] *See* A132-33.

[23] A132.

[24] Smokey Hollow proposed a 100-foot forested or landscaped buffer for lot 64 and an average (not a fixed) 30-foot buffer from all non-tidal wetlands around certain lots. A131-35.

[25] A153-54; B081.

[26] A153.

[27] A154.

C.

Smokey Hollow filed a petition for a writ of certiorari in the Superior Court seeking to strike the two conditions. It claimed that Conditions A and O were unreasonable and contrary to the County Code. The court granted certiorari, found that the Commission made errors of law, and declared the two conditions unreasonable.[28]

First, the court held that, consistent with Supreme Court precedent, the Commission must approve a subdivision plan that complies with the County Code, subject only to reasonable conditions that "minimize any adverse impact on nearby landowners and residents."[29] The court concluded that the Commission imposed Condition A in response to neighborhood opposition rather than to minimize adverse impacts on the Fox Haven neighborhood. It also found that Condition A conflicted with Council's legislative determination that a 30-foot subdivision perimeter setback was sufficient.

As to Condition O, the court held that the Zoning Code's cluster development standards did not apply to Smokey Hollow's property. It also found that the prior

---

[28] *Smokey Hollow, LLC v. Sussex Cnty. Plan. & Zoning Comm'n*, 2025 WL 2816524, at *5, *7 (Del. Super. Oct. 1, 2025).

[29] *Id.* at *2.

8

version of the Code regulated setbacks from wetlands, not wetland buffers.[30] And, according to the court, County Council's later-adopted Ordinance 2852, which requires an average (not fixed) 30-foot non-tidal wetlands buffer, expressly exempted pending applications. Finally, the court held that Condition O imposed a buffer that exceeded the Zoning Code and therefore was an unreasonable condition. The court struck both conditions.

### D.

On appeal, the Commission contends that the Superior Court failed to recognize the Commission's authority to impose reasonable conditions on a subdivision application, even if the application complies with the County Code. It also argues that the court did not consider fully what makes a condition "reasonable."

This Court reviews an administrative agency's decision to determine whether the agency exceeded its discretion.[31] When considering the Commission's decision

---

[30] *Id.* at *6. When Smokey Hollow submitted its the application, the Sussex County Code provided that "[a] minimum of 25 feet of permanent setback must be maintained around the outer boundaries of all wetlands . . . No buildings or paving shall be placed within these setbacks." Subsection of *former* Sussex Cnty. C. § 115-25F(3)(a)(4); *see also* Sussex Cnty. Ord. No. 2852 § 9. A building setback is "[t]he minimum distance that a building must be set back from a street or lot line as required by a building setback line so designated on a plat of a subdivision." Sussex Cnty. C. § 99-5. A resource buffer for wetlands, on the other hand, is "a managed area between residential land uses and resources that is not subdividable once established" which protects the environment against land-use impacts. *Id.* It was not until Ordinance 2852 was adopted, which became effective November 17, 2022, that the County Code required an *average* 30-foot buffer from non-tidal wetlands under certain circumstances. Sussex Cnty. Ord. No. 2852 §§ 9, 13.

[31] *Tony Ashburn & Son, Inc. v. Kent Cnty. Reg'l Plan. Comm'n,* 962 A.2d 235, 238-39 (Del. 2008).

on subdivision plan approval, we review whether the decision is supported by substantial evidence and is free from legal error.[32] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33] Questions of law are reviewed *de novo*.[34]

## II.

## A.

In *Tony Ashburn & Son, Inc. v. Kent County Regional Planning Commission*, we addressed a local government's authority to deny subdivision plan approval even though the plan met the technical requirements of a county code. In *Ashburn*, a developer's subdivision application complied with the Kent County Code, but the county planning commission denied approval based on concerns raised by state agencies.[35] Ashburn appealed to the Kent County Levy Court, which upheld the denial.[36] On certiorari review, the Superior Court affirmed, concluding that the commission had discretion "to ensure that land development proceeds in a manner consistent with the Kent County Comprehensive Plan, the County Zoning Code, and

---

[32] *Id.* at 239.

[33] *Id.* (quoting *Opportunity Ctr., Inc. v. Jamison*, 940 A.2d 946, 2007 WL 3262211, at *3 (Del. May 24, 2007) (TABLE) (citations omitted)).

[34] *Id.*

[35] *Id.* at 237-38.

[36] *Id.* at 238.

the Delaware Code" even when an application complied with the code.[37]  The court

also held that the commission could deny a conforming application because the plan

"is not automatically entitled to approval . . . ."[38]

This Court reversed.  The Majority held that the commission exceeded its

statutory authority by denying a subdivision application that met the county code's

requirements.[39]  As the Majority concluded, the state statute did not permit the

commission to deny a conforming application.[40]  It explained, however, that the

commission could approve an application subject to reasonable conditions:

> [T]he Commission may condition its approval of [a] subdivision
> application based on non-Code factors, such as agency
> recommendations, school capacity issues, and concerns regarding the
> health, safety and welfare of the community.  The Commission may
> consider these issues and has discretion in formulating conditions on
> approval designed to harmonize and coordinate regional planning.  But,
> the Commission's power to impose conditions cannot be
> administratively enlarged to a power to deny a conforming
> application outright.[41]

---

[37] *Id.* (footnote omitted).

[38] *Id.*

[39] *Id.* at 239-42.

[40] *Id.* at 240-41.

[41] *Id.* at 242.

11

In *Ashburn*, we relied on a Superior Court decision *DiFrancesco v. Mayor and Town Council of Elsmere*.[42]  There, the developer proposed a minor subdivision that would divide a parcel into two lots.[43]  The Mayor and Council of Elsmere denied the application because the "proposal did not preserve the general welfare" of the town's residents.[44]  The petitioner sought certiorari review in the Superior Court.[45]

The Superior Court held that the Mayor and Council acted contrary to law.[46] The court relied on an earlier case in which a planning commission denied a site plan for a permitted use.[47]  The court explained that the planning commission could not deny a compliant plan whenever "it is fairly debatable that the project would adversely impact the public health, safety, welfare, comfort and convenience of the neighborhood."[48]  The court also stated that the "[c]ommission may not reject a site plan for a permitted use on the grounds that the project will adversely [a]ffect the

---

[42] 2007 WL 1874761, at *3 (Del. Super. June 28, 2007), *aff'd sub nom.*, *Mayor & Town Council of Town of Elsmere v. DiFrancesco*, 947 A.2d 1122 (Del. 2008)).

[43] *Id.* at *1.

[44] *Id.*

[45] *Id.*

[46] *Id.* at *2-3.

[47] *Id.* (citing *E. Lake Partners v. City of Dover Plan. Comm'n*, 655 A.2d 821 (Del. Super. 1994)).

[48] *Id.* at *3 (quoting *E. Lake Partners*, 655 A.2d at 826).

general neighborhood."[49]  Instead, the commission could approve the plan "subject to reasonable conditions . . . to minimize any adverse impact on nearby landowners and residents."[50]

Together, *Ashburn* and *DiFrancesco* illustrate that a local government cannot deny a subdivision plan that complies with the county code.  It may, however, approve a plan that meets the technical requirements subject to reasonable conditions.  The question is, what are "reasonable" conditions?

B.

The Commission urges us to adopt a more "cogent and comprehensive" test to determine whether a condition is reasonable.[51]  It proposes that "a reasonable condition is one that meets some if not all of" nine factors.[52]  Those factors include whether the condition: a) relies on non-code factors, such as agency comments, school capacity issues, and concerns regarding the health, safety, and welfare of the community; b) falls within the Planning Commission's discretion to harmonize and coordinate regional planning; c) is site specific; d) is rationally related to addressing, in the public interest, the potential land use impact of the proposed use or

---

[49] *Id.* (quoting *E. Lake Partners*, 655 A.2d at 826).

[50] *Id.*

[51] Opening Br. at 27.

[52] *Id.* at 26.

13

development; e) directly relates to the use granted; f) relates to ordinance standards; g) is supported by record evidence; h) is designed to reduce negative impacts to an acceptable level; and i) bears a reasonable relationship to the problem it seeks to alleviate.[53]

Smokey Hollow, on the other hand, asks us to adopt a nuisance-based test to measure reasonableness because nuisance "was the original justification (and purpose) behind zoning codes more generally."[54] It contends that local governments apply land use regulations to define reasonable property uses and prevent potential nuisances. Smokey Hollow explains that whether a nuisance is "reasonable" depends on an objective standard: "that some 'invasion' of another's interest in the use and enjoyment of his land has occurred does not necessarily mean that the invasion is unreasonable."[55] Because a plan that satisfies all Code requirements "is presumed to be reasonable," Smokey Hollow argues that "further restrictions are not necessary" unless a property's proposed development creates a nuisance.[56]

---

[53] *Id.* at 26-27.

[54] Answering Br. at 23.

[55] *Id.* at 23-24 (quoting *Walker v. Williams*, 2016 WL 3569260, at *6 (Del. Ch. June 23, 2016)).

[56] *Id.* at 25.

C.

We decline to apply nuisance-based restrictions or adopt a multi-factor test to assess the reasonableness of subdivision conditions. The reasonableness of a subdivision approval condition depends on the specific facts of each subdivision application.[57] The Superior Court should not be burdened with another multi-factor test, especially on deferential certiorari review. Instead, we follow the course already charted by the Zoning Code and *Ashburn*. Under the Zoning Code, the Commission may "conditionally approve the plat subject to specific changes or modifications."[58] Under *Ashburn*, those approval conditions can include "non-Code factors, such as agency recommendations, school capacity issues, and concerns regarding the health, safety and welfare of the community."[59] The Commission "has discretion in formulating conditions on approval designed to harmonize and coordinate regional planning."[60]

---

[57] *See* 3 EDWARD H. ZEIGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 60:10 (4th ed.) ("The reasonableness of site-specific conditions can only be determined in the context of the specific fact situation involved in the particular case in question.").

[58] Sussex Cnty. C. § 99-9(A).

[59] *Ashburn*, 962 A.2d at 242.

[60] *Id.* It is not enough for an applicant to argue that an approval condition exceeds the technical requirements of the Zoning Code. If that were so, a public hearing would not be needed, and the Commission would simply approve the preliminary plan. As this Court has recognized, "[t]he Commission does not exist 'merely to rubberstamp every application that [meets the technical requirements and] comes before it.'" *Id.* at 239 (quoting *JNK, LLC v. Kent Cnty. Reg'l Plan.*

15

Nonetheless, a developer who follows the technical requirements of the subdivision code should be able to rely on that compliance when seeking governmental approvals.[61] When the Commission subjects plan approval to conditions, the conditions "must be rationally related to addressing, in the public interest, some potential land use impact of the particular use or development in question."[62] In other words, the condition cannot be based primarily on generalized community opposition to the project.[63] The Commission must also state its reasons

---

*Comm'n*, 2007 WL 1653508, at *4 (Del. Super. May 9, 2007)). Rather, the Commission has the discretion to impose reasonable conditions on code-compliant applications.

[61] *Id.* at 241 ("If the Commission is empowered to deny proposals that meet all applicable statutory and Code criteria, purchasers of land would be left unable to predict whether they can develop their land in accordance with the pertinent zoning ordinances, or whether instead the County may prevent development based upon non-Code related *ad hoc* determinations.").

[62] 3 EDWARD H. ZEIGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 60:10 (4th ed.).

[63] *Gibson v. Sussex Cnty. Council*, 877 A.2d 54, 57, 79 (Del. Ch. 2005) (explaining that when making a land use approval decision, "the Council is not free to bend to the prevailing breeze, but must rationally and fairly apply its zoning code and regulations," and further that "[t]he singling out of particular owners for idiosyncratic treatment, just because the prevailing neighborhood wind is unfavorable, is not acceptable when the property owner has met all the criteria that the local government has established for the requested conditional use"). *See Stephen C. Glenn, Inc. v. Sussex Cnty. Council*, 532 A.2d 80, 82 (Del. Ch. 1987) ("Many other courts have held that the zoning authority may impose special conditions or restrictions as a prerequisite to the grant of a conditional use permit, even if the special condition being imposed is not specifically permitted in the enabling legislation, if the special conditions are reasonable, in that they bear a reasonable relation to the public health, safety and welfare and they directly relate to the granted use."); *JNK, LLC*, 2007 WL 1653508, at *3 (the General Assembly created the commission as an administrative agency for the purpose of promoting the health, safety, prosperity and general welfare, as well as for the purpose of securing coordinated plans for land use) (citing 9 *Del. C.* § 4802).

for imposing the condition and how it relates to "the health, safety, prosperity and general welfare" of the public.[64]

## D.

We turn to the two conditions in this appeal. The Superior Court held that the Commission erred as a matter of law when it required Smokey Hollow to eliminate lot 64 because it based its reasoning on generalized objections from nearby property owners. Specifically, the court relied exclusively on complaints by neighbors about the lot's proximity to adjoining properties.[65] The court failed to consider, however, the Commission's primary stated reason for Condition A – environmental concerns unique to the lot. In its decision imposing the conditions, the Commission stated:

> Lot 64 shown on the preliminary subdivision plan is an isolated lot that would be set apart from the remaining subdivision, and it would require crossing over forested wetlands for access. There was testimony in the record that the development of this lot would have the most impact on not only the environment, but also the neighboring residential properties. Testimony from the neighboring property owners indicates that the area where this lot -- this isolated lot would be located frequently floods. For all these reasons, the area where Lot 64 is

---

[64] 9 *Del. C.* § 6802; *see also Tate v. Miles*, 503 A.2d 187, 190 (Del. 1986) (holding that Council must state its reasons if its zoning decisions are to withstand judicial review).

[65] The court found that "six Fox Haven lot owners objected to only one of the lots proposed -- Lot 64 -- because, they claimed, even though it complied with the Code requirements, they felt it would still be too close to their own lots." *Smokey Hollow*, 2025 WL 2816524, at *5. It also stated that "with County Council having made the determination through its legislative process that a 30 foot buffer between a lot and the subdivision boundary is all that is required, Respondent is not free to ignore that determination and require an even greater setback or to eliminate Lot 64 entirely, just because nearby homeowners object to that lot." *Id.* The court concluded that "[t]o hold otherwise would allow Respondent to impose requirements on Petitioner simply because 'the prevailing neighborhood wind is unfavorable.'" *Id.* (quoting *Gibson¸*877 A.2d at 79).

proposed shall remain undeveloped as part of the common area of the subdivision.[66]

When the Commission denied reconsideration of the conditions, it once again relied on the isolated nature of the lot and environmental concerns.[67] It stated that "the conditions [Smokey Hollow is] asking us to change our mind on were made for good reasons" because the lot "was surrounded by the wetlands," was prone to flooding, and required "crossing the wetlands to get to the lot."[68] Imposing conditions based on wetlands and flooding concerns is "rationally related to addressing, in the public interest, some potential land use impact of the particular use or development in question" and implicates the public's health, safety, and welfare.[69]

A question remains, however, whether the Commission's wetlands and flooding concerns specific to lot 64 were supported by substantial evidence. As part of the Smokey Hollow subdivision review, the County Code requires an environmental assessment, which includes addressing wetlands and drainage issues.[70] The Zoning Office reviews those submissions. As far as we can tell from

---

[66] A123.

[67] *See* A153-54.

[68] A153.

[69] 3 EDWARD H. ZEIGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 60:10 (4th ed.).

[70] Before the Commission considers a major subdivision application, the developer must submit a site plan or property survey to the Zoning Office. *See* Sussex Cnty., Delaware, *Major*

18

the record on appeal, the Zoning Office did not flag as problematic any environmental and drainage issues specific to lot 64.[71]

We do not mean to minimize the neighbors' first-hand observations about environmental and flooding concerns for lot 64. That is the purpose of the public hearing – to receive input from affected communities. But before the Commission can condition subdivision approval on eliminating lot 64, it must do more than rely

_____

*Subdivision Application* (April 2024) (describing the subdivision and zoning requirements for a compliant site plan or property survey). Because the Smokey Hollow property was in a Coastal Area, the developer had to submit an environmental assessment, public facility evaluation report, and a sketch plan to the Zoning Office. These submissions address, at a minimum:

> (a) Proposed drainage design and the effect on stormwater quality and quantity leaving the site, including methods for reducing the amount of phosphorous and nitrogen in the stormwater runoff and the control of any other pollutants such as petroleum hydrocarbons or metals . . .

> (f) The preservation and protection from loss of any tidal or nontidal wetlands on the site . . . .

Sussex Cnty. C. § 115-194.3(B)(2).

[71] *See* A033-41. As part of the major subdivision application process, state agencies may offer comments regarding plans before they are reviewed by the Zoning Office. These comments are only advisory. *See* 29 *Del. C.* Ch. 92. Here, the Department of Natural Resources and Environmental Control raised concerns regarding wetlands and drainage. DNREC requested that the project "not disturb wetland areas" because "[w]etlands are a critical part of our natural environment. They reduce the impacts of flooding, absorb pollutants, and improve water quality. Wetlands provide habitat for animals and plants and many contain a wide diversity of life, supporting plants and animals that are found nowhere else." A037. Smokey Hollow stated that the project was "designed to avoid or minimize all impacts to wetlands to the maximum extent possible. A small de-minimis impact for the internal subdivision road and a driveway to access uplands is anticipated. Otherwise all wetlands will be part of open space areas and they will remain undisturbed." *Id.* DNREC also requested that "[a]ll existing drainage ditches on the property . . . be evaluated for function and cleaned, if needed, prior to the construction of the project." Smokey Hollow responded that a portion of the Bear Hole Tax Ditch that crosses the site will be cleaned if needed. *Id.*

on anecdotal statements from neighbors. We remand to the Commission to investigate or charge others to investigate the environmental and drainage concerns and receive input from the developer. The Commission can then condition approval on the developer satisfactorily addressing any environmental and drainage concerns, or if they cannot be addressed satisfactorily, it can condition approval on eliminating lot 64. In either case, the Commission must state its reasons for doing so.

For Condition O, the wetlands buffer, we agree with the Superior Court that, at the time Smokey Hollow submitted its subdivision application, the County Code did not require a buffer between a residential lot and a non-tidal wetland. After Smokey Hollow submitted its application, County Council enacted an ordinance requiring a 30-foot average (not fixed) buffer between residential lots and non-tidal wetlands.[72] Even so, it expressly exempted pending applications.[73]

The Commission did not explain why Smokey Hollow's preliminary plan needed to implement a *fixed* (not an average) 25-foot buffer. At the April 10, 2024 meeting when the Commission considered Smokey Hollow's preliminary plan, the Commission's counsel simply read the proposed condition into the record.[74] The

---

[72] Sussex Cnty. Ord. No. 2852 § 9; Sussex Cnty. C. § 115-193.

[73] Sussex Cnty. Ord. No. 2852 § 13 ("This Ordinance . . . shall not apply to any completed applications on file with the Sussex County Office of Planning & Zoning.").

[74] A127-28.

20

Commission then approved the plan subject to the stated condition without explaining why the fixed buffer condition was necessary.[75]

The Commission again failed to explain the need for the condition when it considered Smokey Hollow's request to amend the conditions. Although the Commission acknowledged Smokey Hollow's objections by stating, "[w]e need to discuss this one" because "[t]hat's a lot," the Commission focused exclusively on Condition A – the lot issue.[76] The Commission noted that "[t]here was a lot of discussion about Lot 64 and [that] the area . . . was surrounded by the wetlands," but once again never explained why the separate 25-foot *fixed* buffer was necessary.[77] We therefore uphold the Superior Court's decision striking Condition O.

## III.

The Superior Court's judgment is affirmed in part, reversed in part, and remanded for the Commission to proceed in accordance with this opinion. Jurisdiction is not retained.

---

[75] A129-30.

[76] A152-54.

[77] A153-54. In its opening brief, the Commission attempted to supply the missing reasons. That explanation was not offered below and cannot be raised for the first time on appeal. *See Stephen C. Glenn, Inc.*, 532 A.2d at 83 (holding that "the [c]ouncil may also impose a special condition which is not set forth in the ordinance if the special condition is reasonably necessary for the public health, safety and welfare" provided the record shows that, before acting, the council had sufficient facts to justify imposing the condition and relied on those facts in making its decision).

21